In the Matter of the Estate of MARY J. LUSHER, Deceased.

Surrogate's Court, Kings County, May 7, 1936.

*Thomas Cradock Hughes,* for Sidney A. Clarkson, as executor of Mary J. Lusher, deceased, petitioner.

*Rutherford S. Moorhead* [*Frank W. Holmes* of counsel], for Walter R. Lusher, respondent.

WINGATE, S. The fundamental question underlying the present application is one of the jurisdiction of this court.

The main proceeding is for a discovery of property of the decedent pursuant to the provisions of section 205 of the Surrogate's Court Act. The answer denied possession of any property of the estate in an individual capacity and asserted that an agreement was entered into on February 23, 1935, between the respondent and the decedent, whereby the parties stated an account of the transactions of the respondent in respect to the possessions of the decedent, and agreed that certain enumerated properties were the only ones in which the decedent possessed any right or interest and that the respondent should have complete control thereof for purposes of management and liquidation.

The reply of the petitioner alleged in substance that at various times prior to January 1, 1935, the decedent had turned over sums aggregating $425,000 to the respondent for investment and that the purported agreement of settlement set forth in the answer was procured by the respondent solely by means of false and fraudulent representation, and undue influence at a time when the decedent was " seriously ill and confined to her bed and mentally unable to fully understand the details thereof," in consequence of which the petitioner, as the executor of the decedent, " does rescind and offer to rescind said alleged agreement, and hereby offers to restore to respondent any and all benefits whatsoever that said decedent has or may have received under and pursuant to said alleged agreement."

The challenge to the jurisdiction of the court is predicated on the hypothesis that the proceeding is one for the collection of a debt which is admittedly properly cognizable only in a tribunal of general jurisdiction. (*Matter of Thomas,* 235 App. Div. 450, 454, 455, 457; *Matter of Hammer,* 237 id. 497, 502; affd., 261 N. Y. 677; *Matter of Epstein,* 148 Misc. 341, 342.)

The powers of the surrogate in this connection are expressly stated in sections 40, 205 and 206 of the Surrogate's Court Act. Section 40, which defines the general powers of the court, provides, in subsection 4, that it shall have power " to enforce against a respondent the delivery of personal property, or the payment of the proceeds or value of personal property belonging to or withheld from an estate." This is supplemented by section 205, which is directly applicable to a discovery proceeding and which provides

for the presentation of a petition by a testamentary fiduciary showing " that money or other personal property, or the proceeds or value thereof, which should be delivered or paid to the petitioner * * * is in the possession, under the control or within the knowledge or information of a person who withholds the same from him, whether such possession or control was obtained in the lifetime of a decedent or subsequent to his death."

The concrete effect of these enactments is epitomized in *Matter of Hammer* (237 App. Div. 497, 501; affd., 261 N. Y. 677), as follows: " Before the adoption of the amendments in 1924 (Laws of 1924, chap. 100) it was only possible in a proceeding under these sections to obtain possession of specific money or personal property which had belonged to the deceased in his lifetime. (*Matter of Heinze,* 224 N. Y. 1.) Consequently, if such property had been exchanged for other property or sold, the Surrogate's Court had no power to direct the value of such property to be paid to the executor or the proceeds to be turned over to him. (*Matter of Hyams,* 237 N. Y. 211.) These limitations were removed in 1924 by the amendments so that property coming into the possession of a person after the death of the deceased may be the subject of a discovery proceeding, and a person in possession of property belonging to an estate who disposes of it may be required to deliver to the executor or pay over to him the proceeds or value of such property. (*Matter of Wilson,* 252 N. Y. 155.) "

The line of demarkation between the instances in which the court has jurisdiction and those in which it has not, is wholly unmistakable. If the genesis of the obligation of the respondent was predicated on the possession of an asset, jurisdiction inheres. If it was based merely on a general claim against him, purely *in personam,* it does not.

In the present instance the claim of the petitioner in this regard is set forth in paragraphs 5, 6 and 7 of the reply, as follows:

" 5. That during the lifetime of decedent * * * she turned over to respondent from time to time certain moneys belonging to her under * * * an agreement with respondent that he would invest the same in first and second mortgages and real estate * * *.

" 6. Upon information and belief, that on January 1st, 1935, said sums with accrued interest thereon amounted in the aggregate to over $425,000.00.

" 7. That respondent caused said sums and the accrued interest thereon to be so invested and reinvested from time to time, and carried some of such investments and reinvestments in his own name and some in that of the decedent."

It is patent on this statement, which must be accepted as true for present purposes (*Matter of Hearn*, 158 Misc 370, 372, and authorities cited), that the basis of the petitioner's claim is to the particular money which was turned over to the respondent for a specified purpose or " the proceeds or value thereof." The or'ginal delivery vested no title thereto in the respondent and its alienation by him cou d lawfully be accomplished only by its investment in the prescribed varieties of securities, title to which would automatically pass to the decedent on acquisition. Respondent was no more than a limited agent and in the event of loss of either the money or the securities acquired, without misconduct on his part, could not be compelled to respond in damages to the decedent. No relationship of debtor and creditor was contemplated, but one merely of bailment and limited agency.

It is conceivable that the respondent may have been confused as to the issues by the course of the pleadings. Whereas the allegations just considered are physically embodied in the reply, they are essentially a part of the petition although properly omitted therefrom in the first instance.

The issue being thus presented of possession by the respondent of money or property, title and immediate right to possession of which is inferentially vested in the petitioner, this issue is joined by the answer, which controverts both elements essential to a recovery by the assertion that both title and right to possession passed to the respondent by virtue of the asserted agreement.

Whether or not this plea in substantial confession and avoidance is sustainable is a pure question of fact, which differs in no essential particular from the frequently encountered defense to a discovery proceeding that the subject-matter in question had become vested in the respondent by the performance of certain acts legally accomplishing a gift. In such a case the question determinable is as to whether the circumstances essential to such a devolution of title took place — whether the acts performed by the decedent and respondent were such as to destroy the previously existing title and right to immediate possession of the former and vest it in the latter.

The questions at bar are essentially the same. It having been demonstrated that title and immediate right to possession of the money and securities were initially in the decedent, were the acts of the parties such as to destroy these rights? In substantiation of an affirmative answer, the respondent has alleged the making of the asserted agreement. The petitioner replies: " True, an agreement as claimed was made, but it was procured by the fraud and undue influence of the respondent, which rendered it voidable, and we have elected to disaffirm it."

The whole question is, therefore, again remitted to the primary one of whether the acts of the decedent and respondent were such as to destroy the previously existing title and right to immediate possess'on of the former to the particular sums of money turned over by her to the respondent or the proceeds or value thereof. If answerable in the affirmative, the respondent will prevail; if in the negative, there will be enforced " against [the] respondent the delivery of [the] personal property, or the payment of the proceeds or value of [the] personal property belong'ng to or withheld from " this estate.

The correct determination of this question is of vital importance to this estate. If this court possesses jurisdiction of the question involved, it would follow by reason of the fact that its aid was first invoked, that a court of general jurisdiction would decline to consider it (*Matter of Hearn*, 158 Misc. 370, 379, and authorities cited) with the result, if this court refused to act, that the petitioner, although conceivably possessing a valid right, would be remediless except possibly for mandamus.

The determination at this time is further necessitated by reason of the present application of the petitioner for an examination of the respondent before trial in respect to the issues raised. If the court is to decline to entertain jurisdiction of the entire question, the application should be denied since it is merely an auxiliary to the solution of the main problem. If, on the other hand, acceptance of jurisdiction for a determination of the principal controversy is obligatory, such auxiliary application, to the extent warranted by pertinent rules of procedure, should be granted.

For the reasons hereinbefore developed, it is wholly patent that jurisdiction of the controversy as a whole must be accepted by this court, with the consequence that the petitioner is entitled to his examination before trial.

The application for examination before trial will accordingly be granted as prayed except that inquiry under items 9 and 10 will be limited to such mortgages and properties as came into the hands of the respondent by reason of the use of moneys received by the respondent either directly from the decedent or from dealings in or with property in which any part of her money or proceeds thereof were invested.

The purpose of this limitation is not in any wise to hamper the petitioner in his efforts to trace the trust funds but merely to prevent a general inquisition into such of the affairs of the respondent as were wholly unconnected with those of the decedent.

In the event that the limitation as expressed shall be found to transcend its intended object, leave is granted to apply for a modification thereof.

Submit order on notice in conformity herewith.